SCOTT E. KURTH
SCOTT E. KURTH, P.C.
1666 N. Hampton Rd., Suite 202
DeSoto, TX 75115
(972) 224-5536
(972) 224-8669 (Fax)

JAMES P. MOON
LAW OFFICES OF JAMES P. MOON, PLLC
1666 N. Hampton Rd., Suite 202
DeSoto, TX 75115
(469) 567-1530
(469) 567-1533 (Fax)

ATTORNEYS FOR RESPONDENTS



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE APPLICATION OF: | § | |
| | § | |
| EUGENIO KEN N/K/A TIMOTHY PAUL STEPHENSON | § § | |

---

| | | |
|---|---|---|
| PAULINO HILMAR KEN and LOUREDES ARELI LINO | § § § | |
| PETITIONERS | § § | |
| V. | § § | CIVIL ACTION NO. 3:04-CV-1267-D |
| KEVIN PAUL STEPHENSON and MELISSA PLESS STEPHENSON | § § § § | |
| RESPONDENTS | § | |

### RESPONDENTS' MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, KEVIN PAUL STEPHENSON and MELISSA PLESS

RESPONDENTS' MOTION FOR SUMMARY JUDGMENT - Page 1

ORIGINAL

**STEPHENSON** (hereafter referred to collectively as the "Respondents") in the above-entitled and numbered cause and, pursuant to Rule 56 of the Federal Rules of Civil Procedure[1], file this their Respondents' Motion for Summary Judgment and, in support thereof, would respectfully show the Court as follows:

## I.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 and 42 U.S.C. §11603 in that this is a petition for the return of a child pursuant to The Hague Convention on the Civil Aspects of International Child Abduction (hereafter the "Convention") and the International Child Abduction Remedies Act ("ICARA") and a motion for summary judgment under F.R.C.P. Rule 56.

## II.

## NATURE OF RELIEF REQUESTED

This is a request by the Respondents for the Court to enter its Order that no genuine issues of material fact exist as to denying the Petitioners' rights to an order for the return of the child in question and that the Respondents are therefore entitled to judgment as a matter of law for the reason that the summary judgment evidence shows that the habitual residence of Timothy Stephenson (hereafter referred to as "Timothy"), at the time of the alleged wrongful retention, was Ellis County, Texas, not the country of Belize. Since Article 4 of the Convention provides that its provisions shall only apply to a child who was

---

[1] Hereafter cited as "F.R.C.P. Rule _____."

**habitually resident** in a Contracting State immediately before any breach of custody or access rights, the Convention does not apply to Timothy.

## III.

## SUMMARY JUDGMENT DOCUMENTS AND EVIDENCE

1. This Motion is supported by the pleadings currently on file in this action, including, but not limited to, the following:

   (a) Petition for Return of Child to Petitioners and Motion for Expedited Hearing (hereafter the "Petition");

   (b) Respondents' Original Answer to Petition for Return of Child to Petitioners (hereafter the "Answer");

   (c) Affidavit of Kevin Paul Stephenson in Support of Respondents' Motion for Summary Judgment (with attached Exhibits); and

   (d) Memorandum Brief in Support of Respondents' Motion for Summary Judgment.

2. To the extent necessary, the Respondents request, pursuant to Rules 201 and 803(8) of the Federal Rules of Evidence (the "FRE"), that the Court take judicial notice of the pleadings on file and the record in this case.

## IV.

## UNDISPUTED FACTS

Based on the record before the Court and the summary judgment evidence submitted in connection herewith, Respondents would assert that the following facts are

RESPONDENTS' MOTION FOR SUMMARY JUDGMENT - Page 3

undisputed:

1. Timothy, the child made the subject of this suit, was allegedly born on June 13, 1994 in the country of Belize.

2. Ruha'mah Stadtlander ("Stadtlander"), at the request of and with the consent of Petitioners, took possession of Timothy when he was eight (8) days old under the terms of a Power of Attorney (the "Ken POA"). A true and correct copy of the Ken POA is attached to the *Affidavit of Kevin Paul Stephenson* as Exhibit 1.

3. On July 5, 1994, Stadtlander obtained a Belizean passport and United States entry visa for Timothy to enter the United States to receive medical care.

4. Stadtlander entered the United States shortly after July 5, 1994 with Timothy.

5. The Respondents obtained possession of Timothy from Stadtlander on July 31, 1994 pursuant to the terms of a Power of Attorney, executed on August 9, 1994 (the "1994 POA"), from Stadtlander giving the Respondents "all parental authority" to care for Timothy and to allow him to reside with them in their home on Buckboard Trail, Ellis County, Texas. A true copy of the 1994 POA is attached to the *Affidavit of Kevin Paul Stephenson* as Exhibit 2 and incorporated herein by reference.

6. The 1994 POA under which the Respondents initially took possession and custody of Timothy specifically provides that:

> "*This Power of Attorney conveys to Kevin and Melissa Stephenson all parental authority, . . .*"

7. In addition, the 1994 POA authorized the Respondents in part as follows:

RESPONDENTS' MOTION FOR SUMMARY JUDGMENT - Page 4

*"(2) That Eugenio Ken be accepted into and be given the necessary care deemed necessary in adopting him into the Stephenson family on a temporary basis which would include but not be limited to church functions, social functions, and out of city family excursions."*

8. Initially, Stadtlander represented to the Respondents that the medical needs of Timothy would be completed and he would be returned to Belize within 3 to 4 months.

9. However, it became apparent early on that Timothy's medical needs were many and varied, and that years of medical care, including, but not limited to heart surgery and plastic surgery to close a bi-lateral cleft palate, would be needed and would not be available in Belize.

10. On June 28, 1995 and July 29, 1996, Stadtlander, on behalf of the Petitioners and under the authority of the Ken POA, confirmed and extended the custodial relationship between Timothy and the Respondents through the execution of successive Powers of Attorney (the "Successor POAs") (hereafter referred to with the 1994 POA as the "Custodial POAs") under substantially the same terms and conditions as the 1994 POA. True and correct copies of the Successor POAs are attached to the *Affidavit of Kevin Paul Stephenson* as Exhibits 3 and 4 and incorporated herein by reference.

11. Further, in March 1995, Respondent Melissa Stephenson began to suspect that Timothy had hearing problems.

12. In May 1995, Timothy was diagnosed with severe hearing loss in both ears, resulting in the need for sign language and speech therapy.

13. On November 13, 1995, Stadtlander, in an e-mail to the Respondents, indicated that the Petitioners wanted the Respondents to adopt Timothy. A true and

correct copy of such e-mail correspondence is attached to the *Affidavit of Kevin Paul Stephenson* as Exhibit 5 and incorporated herein by reference.

14. Further evidence of the Petitioners' expressed intention that Timothy remain with the Respondents is shown in the March 22, 1996 e-mail from Stadtlander. Such e-mail correspondence stated in pertinent part as follows:

> "Recently, the parents went in and extended their power of atty to me and the Consul asked THEM the same questions. My son was with them. The parents said, "Oh yes! And they send us pictures all the time. And we want our little boy to stay right there with Ms. Melissa and Mr. Kevin for we know that not only is he getting the medical care that we could never give him, but we know Ms. Melissa and Mr. Kevin love that little boy just like they give birth to him!"

A true and correct copy of such e-mail correspondence is attached to the *Affidavit of Kevin Paul Stephenson* as Exhibit 6 and incorporated herein by reference.

15. In July 1996, Respondent Melissa Stephenson sent a letter, with photographs, to the Respondents through Stadtlander, describing the wide-ranging family activities engaged in by Timothy. A true and correct copy of such letter is attached to the *Affidavit of Kevin Paul Stephenson* as Exhibit 7 and incorporated herein by reference. This letter details "firsts" for the child like riding a cable car in San Francisco and touring Fisherman's wharf and riding a saucer with his brother, John Stephenson, in the snow in the Sequoia Forest. Details are also provided about a tree house and tree swing in the backyard of the Respondents' residence on Buckboard Trail, Easter egg hunts and the four (4) times weekly Timothy was seeing professionals for speech therapy and the State's Early Childhood Intervention Program.

16. The severity of Timothy's medical condition, as well as Timothy's

remarkable progress while in the care of the Respondents, was verified by Stadtlander in an e-mail dated July 22, 1996, wherein she stated in part:

> "I spent time in tearful prayer THANKING our Father, PRAISING Him and asking Him to bestow his RICHEST blessings upon you as a family sending you as one of the BEST Host Families on this earth!!! As I looked at those PRICELESS photos I wiped away the tears of sheer JOY and GRATITUDE for YOU and all you have done in our precious little ones life . . . for I am POSITIVE the chances of him even being alive today are very, VERY slim had he not come out of Belize!".

A true and correct copy of the July 22, 1996 e-mail is attached hereto as Exhibit 11 and incorporated herein for all purposes.

17. The relationship between the Respondents and Stadtlander continued under the Custodial POAs until February 4, 1997, when Stadtlander sent her e-mail correspondence (hereafter the" February 1997 Letter") to the Respondents abruptly telling them that the Petitioners were withdrawing their consent to the adoption and that the Petitioners wanted the child delivered to Stadtlander, not for return to Belize, but relocation to **Florida**. A true and correct copy of the February 1997 Letter is attached to the *Affidavit of Kevin Paul Stephenson* as Exhibit 8 and incorporated herein by reference.

18. The Respondents responded the next day with an e-mail (hereafter the "Respondents February 1997 Response") to Stadtlander. A true and correct copy of the Respondents February 1997 Response is attached to the *Affidavit of Kevin Paul Stephenson* as Exhibit 9 and incorporated herein by reference.

19. At no time did Stadtlander ever express a desire to return Timothy to Belize after February 4, 1997, but rather to transfer him to her "new" facility in Florida.

20. In fact, on March 16, 1997, in an email newsletter (hereafter the "Newsletter")

sent out to her supporters, a copy of which was sent to the Respondents, Stadtlander stated that:

> "The bottom line is this: If this host family still refuses to transfer him over to me, then we have no alternative but to have him picked up and sent back to Belize immediately. His parents don't want that to happen for then "social" will step in and prevent his return back to the U.S."
>
> . . .
>
> "We have something called 'through the back' where people 'can' get into the U.S. by 'unconventional' methods. We sure don't want to resort to that where Eugenio is concerned if he gets sent back home. But we're prepared to do WHATEVER is necessary to get this child out of that home now. We know the longer we leave him, the harder it's going to be. So if that means he'll have to be deported, then perhaps 'through the back' . . . well!"

A true and correct copy of the Newsletter is attached to the _Affidavit of Kevin Paul Stephenson_ as Exhibit 10 and incorporated herein by reference.

21. From and after the date that the Respondents came into possession of Timothy on July 31, 1994 through February 17, 1994, he has remained at their residence located on Buckboard Trail, Ovilla, Ellis County, Texas, where he was treated as a much loved "son" and attended church, made friends, and enjoyed swimming with his big brother, John Stephenson. All of the foregoing activities were with the expressed agreement of Stadtlander and the Petitioners herein. See the Custodial POAs, _Affidavit of Kevin Paul Stephenson_, Exhibits 3 and 4, respectively.

22. The Respondents exclusively provided all of the parental day-to-day care, love, support, and nurturing to this newborn child from and after the date that he entered their lives.

23. From and after, February 17, 1997, the Respondents and Timothy have continued to maintain their residence on Buckboard Trail, Ovilla, Ellis County, Texas.

V.

## SUMMARY OF ARGUMENTS

1. Based on the summary judgment evidence presented by the Respondents, the pleadings of the parties on file herein, and the record before the Court, as well as the applicable law as set forth in the Memorandum Brief filed in support hereof, the Respondents would show that they are entitled to judgment as a matter of law under F.R.C.P. Rule 56 for the following reasons:

    (a) Under its express terms, the Convention applies only where a child has been a habitual resident of the foreign country in question immediately prior to the alleged wrongful taking or retention. See *42 U.S.C. §11603(b)* and *Hague Convention*, Article 4.

    (b) There is no genuine issue of material fact that the habitual residence of Timothy at the time of the alleged wrongful retention was Ellis County, Texas.

2. The Respondents refer the Court to their Memorandum Brief as to their arguments and authorities in support hereof.

**WHEREFORE, PREMISES CONSIDERED**, Respondents respectfully request that the Court set this matter down for hearing, with notice to Respondents, and that upon completion of the hearing, the Court enter it s Order granting this Motion and rendering

judgment in favor of the Respondents that the request of the Petitioners for the return of Timothy be denied; that, pursuant to the Convention and ICARA, the Respondents have and recover from Stadtlander and/or the Petitioners their reasonable attorneys' fees, costs, and expenses incurred in connection with the defense of the claims asserted herein; and that the Respondents be granted such other and further relief, at law or in equity, to which they may show themselves justly entitled.

Respectfully Submitted,

SCOTT E. KURTH, P.C.
1666 N. Hampton Rd., Suite 202
DeSoto, TX 75115
(972) 224-5536
(972) 224-8669 (Fax)

By: *Scott E. Kurth JL*
SCOTT E. KURTH
State Bar No. 11768475

LAW OFFICES OF JAMES P. MOON, PLLC
1666 N. Hampton Rd., Suite 202
DeSoto, TX 75115
(469) 567-1530
(469) 567-1533 (Fax)

By: *James P. Moon*
JAMES P. MOON
State Bar No. 14316300

ATTORNEYS FOR RESPONDENTS

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Respondents' Motion for Summary Judgment was served on John D. Thompson and Scott Fuqua, VINSON & ELKINS, L.L.P., 3700 Trammell Crow Center, 2001 Ross Avenue, Dallas, Texas 75201, counsel for the Petitioners, by electronic mail, telefax, overnight delivery, and/or United States mail, postage prepaid, on this the 10th day of August, 2004.

JAMES P. MOON

C:\1Data\Kurth\Stephenson\MotionSummaryJudgment.wpd